ELIZABETH A. BROWN (SB# 235429)
AMANDA BOLLIGER (SB# 250292)
JASMINE S. HORTON (SB# 272297)
MATTHEW W. MORRIS (SB# 309741)
lisabrown@gbgllp.com
amandabolliger@gbgllp.com
jasminehorton@gbgllp.com
matthewmorris@gbgllp.com
GBG LLP
633 West 5th Street, Suite 3330
Los Angeles, CA  90071
Telephone:  (213) 358-2810
Facsimile:  (213) 995-6382

Attorneys for Defendant
POPULUS FINANCIAL GROUP, INC.
dba ACE CASH EXPRESS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVIA BARRAGAN, ITZEL LEGORRETA-CRUZALTA, JAVIER RAMIREZ, AND DAMALI URBINA-FAJARDO, individuals on behalf of themselves and all similarly situated employees,<br><br>Plaintiffs,<br><br>vs.<br><br>POPULUS FINANCIAL GROUP, INC. DBA ACE CASH EXPRESS, INC., a Texas Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT POPULUS FINANCIAL GROUP, INC. dba ACE CASH EXPRESS'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[Los Angeles Superior Court Case No. 21STCV31256] |

1   TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT
2   COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFFS
3   AND PLAINTIFFS' ATTORNEYS OF RECORD HEREIN:

4          PLEASE TAKE NOTICE THAT Defendant Populus Financial Group, Inc.
5   dba ACE Cash Express ("ACE" or "Defendant") hereby removes this action from
6   the Superior Court of the State of California for the County of Los Angeles to the
7   United States District Court for the Central District of California.  ACE removes
8   this action pursuant to 28 U.S.C. §§ 1332, 1367, 1441(a) and (b), and 1446, for the
9   reasons stated below:

10  **I.     THE STATE COURT ACTION**

11          On or about August 20, 2021, Plaintiffs Nuvia Barragan, Itzel Legorreta-
12  Cruzalta, Javier Ramirez and Damali Urbina-Fajardo ("Plaintiffs") filed a
13  Complaint in the Superior Court of the State of California for the County of Los
14  Angeles ("Superior Court") entitled "*Nuvia Barragan, Itzel Legorreta-Cruzalta,*
15  *Javier Ramirez and Damali Urbina-Fajardo, individuals on behalf of themselves*
16  *and all similarly situated employees v. Populus Financial Group, Inc. dba ACE*
17  *Cash Express, Inc., a Texas Corporation; and Does 1 through 100, inclusive,*"
18  designated as Case No. 21STCV31256 (the "Action").  A true and correct copy of
19  Plaintiffs' Class Action Complaint in the Action is attached to the Declaration of
20  Amanda Bolliger ("Bolliger Decl.") as Exhibit A.  *See* Bolliger Decl. ¶ 3, Exhibit A
21  ("Compl." or "Complaint").[1]

22          The Complaint alleges the following 11 purported causes of action against
23  ACE:  (1) failure to provide required meal periods in violation of Cal. Lab. Code
24  sections 226.7, 510, 512, 1194, 1197 and IWC Wage Order No. 4-2001, section 11;
25  (2) failure to provide required rest periods in violation of Cal. Lab. Code sections
26  226.7, 512, and IWC Wage Order No. 4-2001, section 12; (3) failure to pay

27
28
_____
[1] Pursuant to 28 U.S.C. § 1446(a), the Complaint and all other publicly-available
process, pleadings, and orders in this action are attached to this Notice as Exhibit A.

Case No.                          -1-        DEFENDANT'S NOTICE OF REMOVAL OF
                                             CIVIL ACTION TO FEDERAL COURT

overtime wages in violation of Cal. Lab. Code sections 510, 1194, 1198 and IWC Wage Order No. 4-2001, section 3; (4) failure to pay minimum wages in violation of Cal. Lab. Code sections 1194, 1197 and IWC Wage Order No. 4-2001, section 4; (5) failure to timely pay wages during employment in violation of Cal. Lab. Code section 204; (6) failure to pay all wages due to discharged and quitting employees in violation of Cal. Lab. Code sections 201, 202, 203; (7) failure to maintain required records in violation of Cal. Lab. Code sections 226, 1174 and IWC Wage Order No. 4-2001, section 7; (8) failure to furnish accurate itemized wage statements in violation of Cal. Lab. Code section 226 and IWC Wage Order No. 4-2001, section 7; (9) failure to indemnify employees for necessary expenditures incurred in discharge of duties in violation of Cal. Lab. Code section 2802; (10) unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code section 17200 *et seq.*; and (11) violation of the Private Attorneys General Act of 2004, Cal. Lab. Code sections 2698, *et seq*. ("PAGA").

On September 7, 2021, ACE's agent for services of process was served with the Summons and Complaint. *See* Bolliger Decl. ¶ 4, Exhibit B.

Defendants Does 1 through 100 allegedly are unnamed and unknown, and therefore have not been served with the Complaint. *See* Compl. ¶ 9.

Defendant filed an Answer in response to Plaintiff's Complaint on October 6, 2021. *See* Bolliger Decl. ¶ 5, Exhibit C.

## II.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE ACTION

This Action is one over which this Court has diversity jurisdiction under the provisions of 28 U.S.C. sections 1332(a) and 1332(d), as well as supplemental jurisdiction under 28 U.S.C. section 1367, and may be removed to this Court pursuant to 28 U.S.C. section 1441 on the following grounds:

//

//

**A.**     **Removal Based on Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d))**

This Action is properly removed to this Court under the rules for diversity of citizenship jurisdiction under the Class Action Fairness Act of 2005. Pub. L. 109-2, § 4(a), 119 Stat. 9.

The Class Action Fairness Act of 2005 ("CAFA") amended 28 U.S.C. section 1332 to provide that a putative class action is removable to federal court if: the proposed class members number at least 100; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and any member of a class of plaintiffs is a citizen of a state different from that of any defendant.

Plaintiffs' Complaint is pled as a putative class action by which Plaintiffs seek to represent "[a]ll current and former non-exempt employees of DEFENDANTS who worked at any locations in the State of California at any time within the period beginning four (4) years prior to the filing of this action, and ending at the time this action settles or proceeds to final judgment." Compl. ¶ 5. There are 1,555 individuals who were employed in non-exempt hourly positions by ACE in California between August 20, 2017, the date that Plaintiffs' Complaint was filed, and August 20, 2021. Declaration of Susan Wells in Support of Populus Financial Group's Notice of Removal ("Wells Declaration"), ¶ 7; *see also*, Compl. ¶ 5 (defining the class period as the "time within the period beginning four (4) years prior to the filing of this action, and ending at the time this action settles or proceeds to final judgment"). Therefore, the requirement that the proposed class consist of at least 100 members is satisfied.

Furthermore, jurisdiction under CAFA is proper because the named Plaintiffs in this action are all citizens of California within the meaning of 28 U.S.C. section 1332. *See* Compl. ¶ 3 ("Plaintiffs NUVIA BARRAGAN, ITZEL LEGORRETA-CRUZALTA, JAVIER RAMIREZ, AND DAMALI URBINA-FAJARDO are a [sic] resident of the State of California."). Plaintiffs, who allege that they are non-

exempt employees (*id.* ¶ 3) and therefore are members of the putative class they seek to represent, also had California home addresses during their employment with ACE.  *See* Wells Decl. ¶ 6.

Additionally, as discussed further in Section II.B.1.b below, ACE is now, and was at the time this Action was commenced, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1) because ACE is now, and was at the time this Action was commenced, a corporation organized under the laws of the State of Texas with its principal place of business in Irving, Texas.  *See* Wells Decl., ¶¶ 3 and 4.  ACE is the only defendant named in this Action, and the presence of Doe defendants has no bearing on diversity with respect to removal.  *See* 28 U.S.C. § 1441(b) ("[T]he citizenship of defendants sued under fictitious names shall be disregarded.").

Finally, without admitting that Plaintiffs and/or the purported class could recover any damages, the amount in controversy placed by Plaintiffs in this Action, in which they assert a maximum four-year liability period, exceeds $5,000,000, exclusive of interest and costs, based on the following:

a.   Under the removal statute, "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).

b.   Between August 20, 2017 through August 20, 2021, a 48-month period, there were at least 1,555 individuals employed by ACE in California as non-exempt hourly employees.  *See* Wells Decl. ¶ 7.  Thus, there are at least 1,555 individuals who fall within the scope of Plaintiffs' alleged class definition and are alleged to be the putative class members in this Action.

//

c.    The average hourly wage rate of a non-exempt hourly position in California between August 2017 and August 2021 was approximately $17.77.  *See id.*, ¶ 8.

d.    In the Complaint, Plaintiffs allege that ACE failed to provide meal and rest breaks, failed to provide accurate wage statements, failed to pay overtime wages, failed to pay minimum wages, failed to pay all wages due at the time of discharge, failed to maintain required records, failed to indemnify employees, and violated California's unfair competition law ("UCL").  *See* Compl., *passim*.  Plaintiffs, on behalf of themselves and those individuals they allege are similarly situated, seek to recover unpaid wages, penalties, restitution, and attorneys' fees against ACE for the four-year period preceding the filing of the Complaint, continuing through the date of final judgment or settlement.  *Id.*  Based on these allegations, the amount Plaintiffs have placed in controversy exceeds $5,000,000, as summarized and explained below.

| | |
|---|---:|
| Meal and Rest Period Compensation | $5,305,411 |
| Wage Statement Penalties | $305,100.00 |
| **TOTAL**[2] | **$5,610,511** |

---

[2] The total amount in controversy contemplated by Plaintiffs' class claims is actually much higher.  The amount estimated by ACE does not include damages and penalties for Plaintiffs' alleged claims for unpaid overtime, unpaid minimum wages, waiting time penalties, failure to maintain required records, failure to indemnify or Plaintiffs' UCL claims.  Nor does this estimate include reasonable attorneys' fees and costs which are also sought by Plaintiffs.  *See* Compl., Prayer ¶ 9.  While ACE has shown that the amount in controversy exceeds $5 million due to Plaintiffs' meal period, rest break, and wage statement claims alone, the actual amount in controversy is even higher.

i.  <u>Meal and Rest Period Compensation</u>:  In the Complaint, Plaintiffs claim that ACE systematically denied them and the putative class members meal periods and did not pay any premium compensation.  *See* Compl. ¶ 17 (alleging that "as part of [ACE's] illegal payroll policies and practices to deprive their non-exempt employees of all wages earned and due, [ACE] required, permitted, or otherwise suffered PLAINTIFFS and CLASS MEMBERS to take less than the 30-minute meal period …); *id.* ¶ 20 (alleging that ACE further violated California's Labor Code by failing to compensate employees for missed meal periods).  Plaintiffs also claim that ACE systematically denied them and the putative class members rest periods.  Compl. ¶¶ 22-24 (alleging that ACE's "illegal payroll policies and practices" prevented Plaintiffs and class members from taking duty-free rest periods).

Assuming that Plaintiffs and the putative class members each missed just two meal periods and two rest periods per month over the course of the liability period, and using an average hourly wage rate of $17.77 an hour, the amount in controversy as to Plaintiffs' meal and rest break claims would be at least **<u>$5,305,411</u>** (4 meal or rest period premiums x $17.77 per hour x 48 months x 1,555 putative class members).

ii.  <u>Wage Statement Penalties</u>:  In the Complaint, Plaintiffs also allege that ACE "routinely failed to provide PLAINTIFFS and CLASS MEMBERS with timely,

accurate, and itemized wage statements in writing
showing each employee's gross wages earned, total hours
worked, all deductions made, net wages earned, the
inclusive dates of the period for which the employee is
paid, the name and address of the legal entity or entities
employing PLAINTIFFS and CLASS MEMBERS, and
all applicable hourly rates in effect during each pay period
and the corresponding number of hours worked at each
hourly rate."  Compl., ¶ 50; *see also id.*, ¶ 51 (alleging
that ACE "knowingly and intentionally failed to provide"
accurate and timely wage statements to Plaintiffs and
class members).

iii.    California law requires employers to provide employees
with itemized wage statements that accurately state the
gross wages earned, total hours worked, net wages
earned, and the name and address of the legal entity that is
the employer, among other items.  Cal. Lab. Code § 226.
Employees who suffer injury from an employer that
knowingly failed to provide the required itemized wage
statements may recover wage statement penalties of $50
for an initial violation and $100 for subsequent violations.
*Id.* § 226(e).  Under California Labor Code section
340(a), the limitations period for wage statement penalties
is one year.

iv.    Between August 20, 2020 and August 20, 2021,
approximately 678 putative class members were
employed by ACE.  Wells Decl., ¶ 9.  ACE compensates
its employees on a bi-weekly schedule.  *Id.*  Assuming

that Plaintiffs can establish just five non-compliant wage statements for those putative class members during that limited time frame, the amount in controversy as to Plaintiffs' wage statement penalty claim would be at least **$305,100** (($50 penalty + ($100 penalty x 4 additional violations)) x 678 putative class members).

### B.  Removal Is Also Proper Based on Diversity of Parties and the Amount In Controversy Between One Named Plaintiff and ACE

In addition to jurisdiction based on CAFA, removal is proper under 28 U.S.C. section 1332(a), and may be removed to this Court pursuant to 28 U.S.C. section 1441(a) on the grounds that (a) it is a civil action; (b) ACE and Plaintiffs are citizens of different states; and (c) the matter in controversy between at least one of the Plaintiffs and ACE exceeds $75,000, exclusive of interests and costs. In a multi-plaintiff action such as this one, "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Exxon Mobil Corp. v. Allapattah Svcs, Inc.*, 545 U.S. 546, 549 (2005). Accordingly, if the alleged amount in controversy exceeds $75,000 for any one of the named Plaintiffs, removal of all claims is proper.

### 1.  Complete Diversity Exists Between the Parties

### a.  Plaintiffs Are Citizens of California

Complete diversity exists between Plaintiffs and ACE.  For diversity purposes, a person is a "citizen" of the state in which he is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's

1   domicile is the place he resides with the intention to remain or to which he intends

2   to return.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

3          The Complaint states that "Plaintiffs … are a resident [sic] of the State of

4   California …."  Compl., ¶ 3.  Plaintiffs also worked in California throughout their

5   employment with ACE.  *Id*., ¶ 2 ("… performed work for DEFENDANTS in the

6   County of LOS ANGELES …."; *see also* Wells Decl., ¶ 6.  Additionally, all home

7   addresses that Plaintiffs furnished to ACE were in California.  *Id.*, ¶ 6.

8                           **b.      ACE Is A Citizen Of Texas**

9          The Supreme Court established the proper test for determining a

10  corporation's principal place of business for purposes of diversity jurisdiction in

11  *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).  The Court held that the "'principal

12  place of business' is best read as referring to the place where a corporation's

13  officers direct, control, and coordinate the corporation's activities."  *Id.* at 92-93

14  (quoting 28 U.S.C. § 1332(c)(1)).  The court further clarified that the principal

15  place of business was the place where the corporation "maintains its headquarters –

16  provided that the headquarters is the actual center of direction, control and

17  coordination."  *Id.* at 93; *see also Montrose Chem. Corp. of Cal. v. Am. Motorists

18  Ins. Co.*, 117 F.3d 1128, 1134 (9th Cir. 1997) (holding that a corporation's principal

19  place of business is the state in which it performs a substantial predominance of its

20  corporate operations and, when no state contains a substantial predominance of the

21  corporation's business activities, then the corporation's principal place of business

22  is the state in which the corporation performs its executive and administrative

23  functions).

24         ACE is a corporation that is incorporated in the State of Texas.  Wells Decl.,

25  ¶ 3.  ACE's principal place of business, and the location from which its high-

26  ranking officers and their supporting management personnel direct, control and

27  coordinate the corporation's activities, is, and was at all times relevant to this

28  action, located in Irving, Texas.  *Id.* ¶ 4.

ACE's President and Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, Chief Human Resources Officer, and Chief Marketing Officer are all located in Irving, Texas. *Id*. ACE, by and through its high ranking officers and their supporting management personnel whose offices are located in Irving, Texas, directs, controls and coordinates activities which include the following: (1) matters relating to the financing of ACE's operations; (2) advertising and marketing of products; (3) directing general business and operations; (4) compliance with state and federal laws and legal service associated with such matters; and (5) the size and composition of ACE's workforce. The books and records relating to these, and other matters which are directed, controlled, and coordinated from the headquarters office in Irving, Texas, are maintained at that office. *Id.*

Accordingly, ACE is, and was at all times relevant to this action, a citizen of the State of Texas.

### c. The Citizenship Of Doe Defendants Is Irrelevant

For purposes of removal "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Inclusion of "Doe" defendants in a state court complaint has no effect on removability. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that in determining whether diversity of citizenship exists, only the named defendants are considered). Therefore, Plaintiffs' inclusion of Does 1 through 100 in the Complaint cannot defeat diversity jurisdiction.

### 2. The Amount in Controversy Exceeds $75,000

Removal is proper if, in addition to complete diversity, it is more likely than not that the value of the claims that a plaintiff has placed in controversy – *i.e.*, their potential recovery – exceeds $75,000. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003); 28 U.S.C. § 1332(a). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Comm., Inc.*, 627 F.3d 395,

400 (9th Cir. 2010) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)).  In other words, when assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint."  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (alterations omitted).

Here, Plaintiffs seek damages for: compensatory damages in an amount to be ascertained at trial; restitution for all monies due to Plaintiffs; disgorged profits from the [alleged] unfair business practices; allegedly unpaid meal period and rest period premiums; liquidated damages pursuant to California Labor Code sections 1194.2 and 1197.1; preliminary and injunctive relief; waiting time penalties pursuant to California Labor Code section 203; statutory and civil penalties authorized by California Labor Code sections 210, 226.3, 226(e), 558, 1197.1 and 2699; interest on unpaid wages at 10% per annum; reasonable attorney's fees and costs; declaratory relief; and any other relief that the Court may deem just and proper.  *See* Compl. Prayer.

As set forth below, the readily ascertainable alleged damages for named Plaintiff Javier Ramirez alone exceeds $75,000.[3]  Adding attorneys' fees – as required by the removal statute – brings the amount in controversy even further over the jurisdictional limit.

If one co-plaintiff is diverse from defendants and the amount in controversy exceeds the jurisdictional minimum, then supplemental jurisdiction is proper over the remaining co-plaintiffs' claims.  *See Exxon*, 545 U.S. at 549.  Accordingly, because the alleged amount in controversy exceeds $75,000 for one of the named Plaintiffs (Ramirez), removal of all claims is proper.

---

[3] Of the four named Plaintiffs, Javier Ramirez had the highest average hourly rate of pay during the four-year limitations period alleged by Plaintiffs.  Wells Decl., ¶ 5.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

###### a.      Plaintiff Javier Ramirez's Alleged Economic Damages Alone Exceed $75,000

According to Plaintiffs' complaint, ACE employed practices which deprived Plaintiff Ramirez of compliant meal periods and rest breaks during his employment. *See*, Compl. ¶ 17-18, 22-23.

Ramirez was a full-time employee.  Wells Decl., ¶ 5.  Assuming that Ramirez worked five days a week, eight hours a day, and never received a compliant meal period or rest break as alleged, he would be entitled to three extra hours of pay per day worked (one hour for his non-compliant meal period, and two hours for a non-compliant first and second rest breaks).

From 2017 to 2021, Ramirez's average hourly rate was $16.05 an hour. Wells Decl., ¶ 5.  Because Plaintiffs have alleged that ACE's payroll practices have deprived employees of compliant meal and rest breaks and have not limited or defined the scope of ACE's alleged policies or their impact on Plaintiffs' meal periods and rest breaks (which for full-time employees are required on a daily basis), Plaintiffs' Complaint seeks recovery for unpaid meal periods and rest breaks every day over a four-year period.  *See* Compl., ¶ 17 (alleging ACE employed payroll policies that deprived Plaintiffs and class members of meal period violations without limitation); *id.*, ¶ 22 (alleging same with regards to rest break violations).  Therefore, using an average hourly rate of pay of $16.05, the amount of damages asserted by Ramirez for his alleged meal period and rest break violations is approximately **$50,268.60**.[4]

---

[4] There are 104 normal weekend days in each calendar year (52 weeks x 2 days of weekend = 104).  Accordingly, there are 261 working days in each calendar year (365 days – 104 weekend days = 261 working days).  This means there were approximately 1,044 working days over the course of the statute of limitations period (261 x 4 years = 1,044 working days).  If Ramirez was owed, on average, $48.15 for each workday for missed meal and rest breaks (3 hours of wages per day x $16.05 average hourly wage over the statutory period), his total damages for his meal and rest break claims are approximately $50,268.60 ($48.15 x 1,044 working days).

Case No.                                              -12-      DEFENDANT'S NOTICE OF REMOVAL OF
                                                               CIVIL ACTION TO FEDERAL COURT

In addition to penalties for previously missed meal period and rest break premiums, Ramirez is also seeking waiting time penalties for ACE's alleged failure to pay all compensation at the time of discharge. *See* Compl. ¶¶ 40-45. At the time of his employment terminated, Ramirez was paid approximately $18.40 per hour. Wells Decl., ¶ 5. Per California Labor Code section 203, if an employer fails to pay an employee all wages owed at the time of the employee's discharge, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate … but the wages shall not continue for more than 30 days." Accordingly, should Ramirez prevail on his claim for waiting time penalties, he would be entitled to approximately **$4,416.00** in penalties (30 days x ($18.40 per hour x 8 hours a day)).

Furthermore, Ramirez is seeking penalties pursuant to Labor Code section 226 for failure to provide accurate itemized wage statements. *See* Compl., ¶¶ 50-52. Damages for such alleged violations are capped at **$4,000.** Cal. Lab. Code § 226(e)(1) ("An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) [i.e., to provide accurate itemized wage statements] is entitled to recover the greater of all actual damages … not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.").

Ramirez also asserts claims for failure to timely pay all wages during employment pursuant to Labor Code section 204. *See* Compl. ¶¶ 34-38. Specifically, Plaintiffs seek "a civil penalty of: (1) one hundred dollars ($100) for each failure to pay each employee for each initial violation; and (2) two hundred dollars ($200) for each failure to pay each employee, plus twenty-five percent (25%) of the amount unlawfully withheld, for each subsequent violation." These penalties are subject to a one-year statute of limitations. Assuming a violation in each of the 26 annual pay periods, Ramirez would be entitled to **$5,100** in statutory penalties ($100 + (25 x $200)). This is before adding an additional penalty equal to

25% of the amount allegedly withheld, which ACE is unable to approximate given the vague nature of Plaintiffs' allegations.

In summation, for Plaintiff Ramirez, the amount of potential damages that are readily ascertainable[5] on the face of the Complaint is *at least* **$63,784.60** ($5,100 + $4,000 + $4,416 + $50,268.60).

The Ninth Circuit has found that employment cases presenting lower readily ascertainable damages met the jurisdictional minimum. *See, e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (lost wages of $55,000 in an employment discrimination case met the jurisdictional minimum when considered in light of the potential recovery of other damages, including attorney's fees); *White v. FCI USA, Inc.*, 319 F.3d 672, 675-76 (5th Cir. 2003) (wrongful termination claim alleging a "lengthy list" of compensatory damages – including loss of pay, impaired earning capacity – combined with a claim for attorneys' fees, was sufficient to exceed the $75,000 jurisdictional minimum, even though plaintiff had only allegedly suffered $13,000 in damages from lost income at the time of removal).

Thus, assuming that Plaintiff Ramirez will prevail on his claims, as the Court must for the purposes of assessing removability, the amount in controversy has been satisfied.

### b. The Sum of the Remaining Damages and Remedies Likewise Exceeds $75,000.

It is not simply the economic damages that are considered in determining whether the jurisdictional amount is met. Rather, the presently unascertainable damages – e.g., attorneys' fees – also must be included. *Gibson v. Chrysler Corp.*,

---

[5] Ramirez also seek damages related to Plaintiffs' claims for failure to pay overtime, failure to pay minimum wage, failure to maintain required records, failure to indemnify, and unfair business practices. However, due to the fact that Plaintiffs' claims, as plead, are incredibly vague, they provide insignificant factual information to allow ACE to approximate the total amount in controversy for these claims. However, for the purposes of ascertaining removability, the Court must assume that Plaintiffs will prevail on *all* of their claims. *See LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

1  261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are

2  part of the amount in controversy in a civil action"); *Galt G/S v. JSS Scandinavia*,

3  142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees may be included in the

4  amount in controversy if recoverable by statute or contract).  These damages

5  include "the amount that can reasonably be anticipated at the time of removal, not

6  merely those already incurred." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029,

7  1035 (N.D. Cal. 2002).

8      Plaintiffs seek recovery for attorneys' fees and costs, as well as prejudgment

9  interest.  Compl. Prayer ¶¶ 8-9.  "[W]here an underlying statute authorizes an award

10 of attorneys' fees, either with mandatory or discretionary language, such fees may

11 be included in the amount in controversy." *Galt G/S*, 142 F.3d at 1156.  Several of

12 Plaintiffs' claims mandate a recovery of attorneys' fees.  *See* Cal. Labor Code

13 §§ 218.5, 1194, 2699, and 2802; Cal. Civ. Code § 1021.5.  Assuming that a

14 reasonable rate for Plaintiffs' attorney in this case is $300 per hour, and assuming

15 that Plaintiffs' counsel spends just 100 hours on a claim to which fees attach

16 through resolution, the amount of attorneys' fees at issue would be at least $30,000.

17 *Simmons*, 209 F. Supp. 2d at 1035 (weighing attorneys' fees into the amount in

18 controversy, noting that employment claims "require substantial effort from

19 counsel").

20     Any number of combinations of alleged compensatory damages and penalties

21 demonstrates that Plaintiff Ramirez has placed in controversy an amount well in

22 excess of the $75,000 jurisdictional minimum.  Attorneys' fees, which the Court

23 may consider on removal, buttress this conclusion.  Where, as here, the amount in

24 controversy exceeds this Court's jurisdictional limit of $75,000 and the parties are

25 of diverse citizenship, removal is proper.

26 //

27 //

28 //

III.  **SATISFACTION OF REQUIREMENTS OF 28 U.S.C. §§ 1441(A) AND 1446**

In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiffs' counsel and filed with the Clerk of the Los Angeles County Superior Court.  True and correct copies of the Notice to Superior Court of Removal of Civil Action and the Notice to Adverse Parties of Removal of Civil Action are attached to the Bolliger Declaration as Exhibits D and E, respectively.  Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

This Notice of Removal is timely.  It is filed within thirty (30) days of service of the Complaint, making this matter removable pursuant to 28 U.S.C. § 1446(b).

Venue is proper in this District pursuant to 28 U.S.C. § 1441(a) because the Superior Court where the removed case was pending is located within this District.

IV.  **CONCLUSION**

This civil class action is between citizens of different states, the putative class size is over 100 individuals, and the amount in controversy exceeds $5 million.  Additionally, the named Plaintiffs and named Defendant are completely diverse, and the amount in controversy exceeds $75,000 for at least one of the named Plaintiffs, making supplemental jurisdiction proper over the remaining Plaintiffs.  As such, ACE respectfully requests that this Court exercise its removal jurisdiction over this action.  In the event this Court has a question regarding the propriety of this Notice of Removal, ACE requests that it issue an Order to Show Cause so that ACE may have an opportunity to more fully brief the Court on the basis for this removal.  Accordingly, ACE hereby removes the above action now

//
//
//
//

1   pending before the Superior Court for the State of California for the County of Los

2   Angeles to this Court.

3   DATED:  October 7, 2021                    GBG LLP

4

5
                                             BY:_____/s/ Amanda Bolliger_____
6                                                   AMANDA BOLLIGER

7                                            Attorneys for Defendant
                                             POPULUS FINANCIAL GROUP,
8                                            INC. dba ACE CASH EXPRESS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28