UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVIA BARRAGAN et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>POPULUS FINANCIAL GROUP, INC. et al.,<br><br>      Defendants. | Case No. 2:21-cv-08021-SB-MRW<br><br>ORDER GRANTING IN PART MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS REPRESENTATIVE SERVICE PAYMENTS [DKT. NO. 35] AND GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS [DKT. NO. 34] |

      In this class action, Plaintiffs Nuvia Barragan, Itzel Legorreta-Cruzalta, Javier Ramirez, and Damali Urbina-Fajardo (Class Representatives) alleged wage and hour violations against Defendant Populus Financial Group, Inc. The parties reached a settlement, which the Court preliminarily approved. Dkt. No. 33. Plaintiffs now move for final approval of the parties' settlement agreement, attorneys' fees and costs, and class representative service awards. Dkt. Nos. 34, 35. No class member objected to the settlement. Dkt. No. 35-5 ¶ 12. For the reasons stated below, Plaintiffs' motion for final approval of the class action settlement and class representative service awards, Dkt. No. 35, is GRANTED IN PART and Plaintiffs' motion for attorney's fees and costs, Dkt. No. 34, is GRANTED.

I.

      This settlement involves both class claims and claims brought under California's Private Attorneys General Act (PAGA), which allows an aggrieved employee to sue to recover civil penalties for wage and hour violations on behalf of California's Labor and Workforce Development Agency (LWDA). Cal. Lab.

1

Code § 2698 et seq.  Penalties that private persons recover under PAGA are distributed according to a statutory formula, with 75% going to LWDA and 25% going to all aggrieved employees.  Cal. Lab. Code § 2699(i).

The settlement agreement defines two settlement classes, one for general settlement purposes and one for settlement of the PAGA claims.  The general settlement class is defined as "All individuals who are or previously were employed by ACE in California as non-exempt employees during the Class Period.  'Class Period' is defined as the time period of August 20, 2017 through the date of preliminary approval of this Settlement."  Dkt. No. 33 at 7.  The PAGA settlement class is "All members of the Settlement Class who were employed by Defendant in California during the PAGA Settlement Period.  'PAGA Settlement Period' is defined as the time period of June 16, 2020 through the date of preliminary approval of this Settlement."  *Id*.

Under the agreement's terms, Defendant agrees to make a nonreversionary payment of $875,000, to be allocated in the following manner:

- Up to $291,666 for attorneys' fees;

- Up to $40,000 for attorneys' costs;

- $22,450 for Settlement Administrator ILYM Group, Inc;

- $40,000 for the Class Representatives ($10,000 each) as service awards;

- $50,000 to settle PAGA Members' PAGA claims, with $37,500 being paid to LWDA and the remaining amount to be allocated to PAGA class members in proportion to the number of workweeks worked in the PAGA period;

- The remainder to class members on a pro rata basis based on the number of workweeks within the class period each class member was employed by Defendant.

Dkt. No. 31-3 at 6–7.  In their motion for final approval, Plaintiffs seek approval of the amounts above with a reduction in attorney's costs to $17,965, based on costs actually incurred.  Dkt. No. 35-2 ¶ 58.  Deducting for claimed attorney's fees and costs, administration costs, and the service awards, each class member will receive

an average award of approximately $227.26, and the maximum recovery for any class member will be approximately $1,080.49.  Dkt. No. 35-1 at 9.

In general, the agreement releases Defendant from liability to class members who do not opt out of the settlement for wage and hour violations arising during the Class Period.  Dkt. No. 31-3 at 3–4.  The agreement also releases Defendant from liability to PAGA Members for any claims that could have been brought under PAGA arising during the PAGA Period.  *Id*.

II.

The Court conditionally certified the class for settlement purposes.  Dkt. No. 33 at 7–8.  The Court evaluated the parties' proposed procedures for noticing class members, which included mailing a copy of the Court-approved notice to all class members.  *Id*. at 6–7.  The Settlement Administrator received the class data file on October 18, 2022 and processed the 1,897 names and addresses received against the National Change of Address Database to update and confirm the mailing addresses of the class members.  Dkt. No. 35-5 ¶¶ 5–6.  The notice packet was then mailed to each of the individuals.  *Id*. ¶ 7.  Forty-six of the packets were returned as undeliverable, 33 of those were remailed with updated addresses obtained through skip tracing and calls made by class counsel, and just 13 notices were undelivered,  resulting in an actual receipt rate of 99.31%.  *Id*. ¶¶ 8–10;  Dkt. No. 35-1 at 12.  The Court finds that this notice complies with the requirements of Rule 23 and due process.

The settlement agreement states that class counsel will file their agreement with the LWDA and mail notice of the settlement pursuant to their obligations under the Class Action Fairness Act (CAFA).  Dkt. No. 31-3 at 13–14.

There were no objections to the settlement and just one class member requested to be excluded.  Dkt. No. 35-5 ¶¶ 11–12.

III.

A.

Plaintiffs seek final approval of the class settlement.  Final approval may only be granted if the Court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate."  *Lane v.*

3

*Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)).  The Court's inquiry is guided by several, non-exclusive factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* (internal quotation marks omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  "Each factor does not necessarily apply to every class action settlement, and others may also be considered." *Miller v. Wise Co.*, No. 17-cv-00616-JAK, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020).

When there is a settlement prior to formal class certification, a court must also determine whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).  In addition to explicit collusion, a court should look for "more subtle signs" that class counsel have acted in their own self-interest or only in the interest of certain class members, such as:  (1) class counsel receiving a disproportionate amount of the settlement or being "amply rewarded" when class members receive no monetary relief; (2) payment of attorneys' fees separate and apart from class funds; or (3) an arrangement reverting any fees not awarded to the defendant rather than the class fund.  *Id*.

B.

The *Hanlon* factors support a finding that the settlements are fair, reasonable, and adequate.  First, the Court evaluates together the strength of Plaintiffs' case, the risk of continued litigation, and the settlement amount.  To determine if a settlement is fair, the Court must balance the strengths and weaknesses of Plaintiffs' case against the risks and expenses of continued litigation.  *In re Mego*, 213 F.3d at 458–59.  "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  No one formula governs the Court's determination of the likelihood of Plaintiffs' success, which the Ninth Circuit has

described as "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

The risks of further litigation justify approval. While Plaintiffs assert their case is strong, they acknowledge that "Defendant possessed strong defenses" to class certification and to liability. Dkt. No. 35-1 at 17. Specifically, Plaintiffs acknowledge that Defendant could legitimately counter their derivative waiting time and wage statement penalties as well as their PAGA claims, because those claims "were wholly derivative of the underlying Labor Code violations." *Id.* Given those risks, the settlement amount appears fair and reasonable. Class counsel calculate a maximum recovery of approximately $4.29 million, "[b]ut after factoring in the risk of failing at class certification, post-certification, or trial, it is appropriate to discount this figure by 80%." Dkt. No. 35-2 ¶ 29 (calculating a "risk-discounted figure of $0.85 million"). Under the proposed settlement, the net amount available to the class will be approximately $430,884. *Id.* ¶ 34. Class members will receive an average of $227.26. Dkt. No. 35-1 at 9. The highest payment will be $1,080.49. *Id.* This case has been ongoing for over one year and its path forward is uncertain. An immediate recovery for class members is preferable to prolonged risk and expense of further litigation. In context, this amount is fair and adequate. *See In re Mego*, 213 F.3d at 459 (holding that a settlement amounting to "only a fraction of the potential recovery" was fair "given the difficulties in proving the case").

Second, the Court examines the extent of discovery completed and the stage of the proceedings. A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. The parties have engaged in written discovery, including requests for production, interrogatories, and expert analysis of produced documents to prepare a damages model. In preparing the damages model, which was intended to prepare counsel for mediation, the expert analyzed class members' pay and time records so that counsel could "act intelligently in negotiating the Settlement." Dkt. No. 35-2 ¶ 10. The parties also engaged in formal mediation with an experienced wage-and-hour class action mediator, which further weighs "in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011). The settlement was reached after mediation and only after the parties received a mediator's proposal, which suggests that it was the product of informed, arm's-length negotiations. Dkt. No. 35-2 ¶ 12. The Court finds that

5

there was sufficient discovery and an arms-length negotiation. Accordingly, the work completed to date favors settlement.

Third, the Court looks at the experience and views of Class Counsel. Where Class Counsel recommend the proposed terms of settlement, courts are to give their determination "[g]reat weight," because counsel "are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. Plaintiffs are represented by experienced counsel. *See* Dkt. No. 35-2 ¶¶ 40–50. Class Counsel have worked on this case for over a year and, as noted above, conducted discovery sufficient to make their views on settlement informed. Class Counsel support approval. Dkt. No. 35-1 at 15. Counsel's agreement that the settlement is favorable to the class weighs in favor of approval.

Fourth, the Court considers the presence of a governmental participant. Plaintiff sought to enforce PAGA claims on behalf of the state and affected employees, and the settlement includes a $37,500 payment to LWDA. Accordingly, this factor weighs in favor of approval. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (PAGA payment to LWDA favors approving the settlement).

Finally, the Court examines the reactions of class members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529. As noted above, no Class Member has objected to the settlement. Dkt. No. 35-5 ¶ 12. Just one Class Member opted out from participating in the settlement. *Id.* ¶ 11. Class members overwhelmingly support the settlement, which warrants approval.

C.

The Court turns to the issue of whether the settlement is collusive. The proposed settlement allocates one-third of the gross settlement to attorneys' fees and approximately two percent to costs. An allocation of large fees to class counsel juxtaposed against a relatively small payout to class members may be a "warning sign" of collusion. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258–59 (N.D. Cal. 2015). The Court finds that the settlement is not a product of collusion between the parties. As discussed *infra*, Class Counsel's request for attorney's fees is reasonable as a percentage of the gross settlement and is supported by a cross-check against Counsel's lodestar value. Nor are the attorneys' fees and incentive awards provided "separately from the class

6

settlement" but instead made from the gross settlement amount, which is not suggestive of collusion. *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000); *see also Rodriguez*, 563 F.3d at 961 n.5 (noting that fees and awards made from the settlement fund instead of in addition to it did not "signal the possibility of collusion because, by agreeing to a sum certain, [the defendants] were acting consistent with their own interests in minimizing liability"). The parties negotiated the settlement with a neutral mediator, which further weighs "in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 948. As noted, the settlement contemplates Defendant's nonreversionary payment into the gross settlement fund. Finally, there is no evidence of explicit collusion here, and class members appear to be receiving a favorable outcome to which there are no objections. Accordingly, the Court is satisfied that the settlement did not result from collusion between the negotiating parties.

\* \* \*

Based on its analysis of the factors for final approval, the Court finds that the settlement is "fair, reasonable, and adequate" and not the product of collusion between the parties. *Lane*, 696 F.3d at 818. The Court therefore GRANTS Plaintiffs' motion for final approval of the class action settlement, with the exception of the requested Class Representative service awards, discussed below.

IV.

Plaintiffs also seek an award of attorneys' fees in the amount of $291,666, an award of costs in the amount of $17,965, class representative service awards totaling $40,000, and $22,450 to ILYM Group for the fees and costs of settlement administration. The Court addresses each of these in turn.

A.

First, the Court considers the appropriate attorneys' fees to award. Courts may exercise discretion in cases "where a settlement produces a common fund for the benefit of the entire class" and may "employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942. Regardless of which method the court applies, "the Ninth Circuit requires only that fee awards in common fund cases be reasonable under the circumstances." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149-MMM, 2008 WL 8150856, at \*8 (C.D. Cal. July 21, 2008) (cleaned up). The

7

percentage method is sometimes preferred, particularly if the use of the lodestar method would endorse a "collusive settlement[] that exchange[d] a low recovery for a high fee award." *Suzuki v. Hitachi Glob. Storage Techs., Inc.*, No. 06-7289-MHP, 2010 WL 956896, at *2 (N.D. Cal. Mar. 12, 2010) (internal quotation marks omitted) (quoting *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 30 (2000)). California authorizes use of the percentage method in common fund cases. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–04 (2016) (*Laffitte I*).

Under the percentage method, the court awards counsel a percentage of the common fund in attorneys' fees, for which the Ninth Circuit has established a 25% benchmark. *Hanlon*, 150 F.3d at 1029. California courts do not have a definitive benchmark, but some "California courts have also found this guideline reasonable in class actions." *Schulz v. Jeppesen Sanderson, Inc.*, 27 Cal. App. 5th 1167, 1176 (2018) (collecting cases). The benchmark should be adjusted or replaced with a lodestar calculation when "special circumstances" justify a departure. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Courts consider the following factors in determining whether the requested adjustment is reasonable: "(1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).

These factors support an attorneys' fee award of $291,666 in this case, which constitutes one-third of the gross settlement amount. Class Counsel obtained recovery for class members despite substantial risks associated with allowing the case to proceed in litigation. Counsel has significant experience in litigating class actions and brought this experience to bear to achieve a positive outcome for class members. *See* Dkt. No. 35-2 ¶¶ 40–50. Courts in the Ninth Circuit commonly find acceptable requests for attorneys' fees that represent 20% to 33.33% of the total settlement. *Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 WL 3412725, at *8–9 (E.D. Cal. June 22, 2020) (collecting cases); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450–51 (E.D. Cal. 2013) (finding that a wage and hour class action presents "sufficient reason" to award class counsel one-third of the settlement fund due to "the risk of the litigation, the contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-and-hour cases"); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at * 8 (E.D. Cal. Aug. 10, 2015) ("California district courts usually award attorneys' fees in the range of 30–40% in wage and hour class actions that result in the recovery of a common fund under $10 million."). California courts are in accord. *See Laffitte v. Robert Half Int'l, Inc.*, 231 Cal. App. 4th 860, 878

(2014) ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits), *aff'd* Lafitte I.

The requested fee is further supported by a cross-check against a rough estimate of the lodestar value. *See* Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."); Barbosa, 297 F.R.D. at 451 (noting that a cross-check of the lodestar "can be performed with a less exhaustive cataloguing and review of counsel's hours"). The lodestar is calculated by multiplying the hours reasonably expended by a reasonable hourly rate based on the experience of counsel and the prevailing market rate in the community. In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d at 941. Once this "lodestar" is calculated, it "may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (internal quotations and citations omitted).

Counsel indicate that they have spent 315.1 hours litigating this case. Dkt. No. 35-2 ¶¶ 53–54; Dkt. No. 35-3 (updated timesheets through filing motion for final approval). They litigated this case for over a year and devoted time to discovery, mediation, and settlement negotiations. The Court finds that the number of hours requested is reasonable. *See* Barbosa, 297 F.R.D. at 451–52 (finding over 900 expended hours reasonable given "the legal issues and the amount of discovery conducted, the number of Defendant's employees included in the Settlement Class, the mediation preparation required, and motion practice with respect to the Settlement Agreement").

Class Counsel's timesheets indicate the attorneys that worked on the case (either Shoham Solouki or Grant Savoy, both Founding Partners), their hourly rates ($750 for both), the number of hours billed and on what task, and the total fees associated with the work. Dkt. No. 35-3. Class Counsel's firm is comprised of three attorneys, and they represent that there were additional hours spent by the Mr. Solouki and his colleagues not captured in their motion, but that they do "not seek to recover such hours." Dkt. No. 34-3 ¶ 40; Dkt. No. 35-2 ¶ 44. Accordingly, they seek to recover all hours expended at the rate for the Founding Partners of the firm, $750. This rate is at the upper end for wage-and-hour class actions. *See, e.g.*, Gomez v. USF Reddaway Inc., No. 16-cv-05572-JAK, 2020 WL 10964603, at *8 (C.D. Cal. Sept. 21, 2020) (finding rates between $450 and $850 to be reasonable for wage-and-hour attorneys in the Central District); Ayala v. U.S. Xpress

9

*Enterprises, Inc.*, No. 16-cv-137-GW, 2019 WL 1581395, at *3 (C.D. Cal. Feb. 13, 2019) (approving rates between $600 and $795). Because Class Counsel have shown that they are experienced wage and hour litigators with ten years' experience each that includes handling numerous wage and hour actions, the Court finds the rate reasonable for use in the lodestar analysis. Dkt. No. 35-2 ¶ 41.

Applying the lodestar calculation to Class Counsel's hours and rates yields a lodestar of $236,325.00. Dkt. No. 35-2 ¶ 54. Based on the lodestar, Counsel seek a 1.23 multiplier to yield the requested award of $291,666. Dkt. No. 35-1 at 10. The Court finds the multiplier appropriate in view of the contingent nature of the recovery, the complexity of the issues, and the overall result obtained. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051, 1051 n.6 (9th Cir. 2002) (approving of a 3.65 multiplier and noting that "the range of multipliers applied in common fund cases" most often ranges from 1.0–4.0); 5 Newberg and Rubenstein on Class Actions § 15:87 (6th ed.) ("Given the risk of nonpayment that contingent lawyers face . . . it is arguable that successful class counsel should necessarily get a multiplier above 1 in most cases.").

Accordingly, the Court finds that the requested fees are reasonable under the percentage method and supported by a lodestar cross-check.

Plaintiffs also request $17,965 in costs. These costs include court and filing fees; delivery and messenger fees; expert witness fees; mediation fees; legal research fees; and postage and mailing. Dkt. No. 35-4. These are traditional litigation costs in wage-and-hour class actions. The Court preliminarily approved costs up to $40,000, and the actual costs are reasonable given that this case is a class action and has been ongoing for over a year. The Court finds that the requested costs should be approved.

B.

Plaintiffs seek $10,000 as Class Representative service awards for each of the Class Representatives. Incentive awards are discretionary and meant to compensate a class representative "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Awards typically range from $2,000 to $10,000, and a $5,000 award is considered presumptively reasonable. *Bellinghausen*, 306 F.R.D. at 266–67. Several factors guide the Court's determination of whether Plaintiff's requested award is reasonable:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Stuart v. Radioshack Corp., No. 07-4499-EMC, 2010 WL 3155645, at *7 (N.D. Cal. Aug. 9, 2010).

The Court expressed its concern about the appropriateness of Plaintiffs' award, which is double the amount considered presumptively reasonable in the Ninth Circuit, given their stated level of involvement in these cases, and noted that it would take a closer look on final approval. Dkt. No. 33 at 5. Upon review, the record in this case justifies granting Plaintiffs' request for class representative awards in part. Each of the Class Representatives submitted a nearly identical declaration stating they spent approximately 20–30 hours on this case, which included discussing the factual bases for the claims asserted with attorneys, searching for and providing documentation to support the claims, reviewing documents including the settlement agreement, and discussing the case with and answering questions from other class members. See Dkt. Nos. 35-6, 35-7, 35-8, 35-9 (Declarations) ¶¶ 6–12, 15. A $10,000 award is unjustified considering the number of hours Plaintiffs spent working on this case. See Bellinghausen, 306 F.R.D. at 267 (finding a $15,000 award excessive and awarding $10,000 to a plaintiff who spent 73 hours on the case over 21 months and lost job opportunities because of his role as class representative). Moreover, although Plaintiffs incurred some employment risk by suing Defendant, they have not demonstrated that the risk is substantial or has materialized. However, the Court is mindful that Plaintiffs are providing Defendant with a general release that is substantially broader than the release that applies to other class members. Accordingly, in light of the work each Class Representative performed in this matter, the Court awards $7,500 each to the Class Representatives for the risks they undertook to litigate this case, the time they spent doing so, and the broader release provision that applies to them under the terms of the settlement.

C.

Finally, Plaintiff seeks an award of fees for the third-party settlement administrator, ILYM Group. Dkt. No. 35 at 2. The Court previously confirmed

11

ILYM as the Settlement Administrator. ILYM's total administration expenses are $22,450, which includes fees and costs incurred to date, as well as anticipated fees and costs for completion of the administration. Dkt. No. 35-5 ¶ 15. The Court grants this unopposed request.

V.

For the foregoing reasons, Plaintiffs' unopposed motion for final approval of their class action settlement is GRANTED and GRANTED IN PART as to the Class Representative service awards. Plaintiffs' unopposed motion for attorney's fees and costs is GRANTED. The Court awards $291,666 in attorneys' fees to Class Counsel, $17,965 in costs to Class Counsel, $22,450 to ILYM Group, and $7,500 each to Class Representatives Nuvia Barragan, Itzel Legorreta-Cruzalta, Javier Ramirez, and Damali Urbina-Fajardo.

IT IS SO ORDERED.

Date: February 10, 2023                                  _____
                                                               Stanley Blumenfeld, Jr.
                                                           United States District Judge